# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

ROGER L. PEELE,                          )
    Plaintiff,                         )
                                       )
v.                                       )    CAUSE NO.: 2:09-CV-138-PRC
                                       )
CLIFF BURCH, PORTAGE POLICE              )
DEPARTMENT, LARRY JOLLEY,                )
and CITY OF PORTAGE,                     )
    Defendants.                        )
_____  )
                                       )
CLIFF BURCH, PORTAGE POLICE              )
DEPARTMENT, LARRY JOLLEY,                )
and CITY OF PORTAGE,                     )
    Counter Claimants,                 )
                                       )
v.                                       )
                                       )
ROGER L. PEELE,                          )
    Counter Defendant.                 )

## OPINION AND ORDER

This matter is before the Court on (1) a Motion for Summary Judgment [DE 49], filed by Plaintiff Roger L. Peele on September 14, 2011; (2) a Motion for Summary Judgment [DE 52], filed by Defendants Cliff Burch, Portage Police Department, Larry Jolley, and City of Portage on September 14, 2011; (3) a Motion to Strike Portions of Plaintiff's Statement of Material Facts [DE 55], filed by Defendants on October 5, 2011; (4) a Plaintiff's Motion to Strike [DE 63], filed by Plaintiff on October 12, 2011; (5) a Plaintiff's Motion to Strike Portion of Defendants' Material Facts Designated in Support of their Response to Plaintiff's Motion for Summary Judgment [DE 72], filed by Plaintiff on October 26, 2011; and (6) a Defendants [sic] Motion to Amend/Supplement their Memorandum in Support of Summary Judgment [DE 83], filed by Defendants on February 21, 2012.

## PROCEDURAL BACKGROUND

On May 11, 2009, Plaintiff filed a Complaint under 42 U.S.C. § 1983. On May 27, 2009, Defendants filed their Answer and Counterclaims alleging malicious prosecution and abuse of process.

Plaintiff filed his Motion for Summary Judgment on September 14, 2011. Defendants filed their response and a Motion to Strike on October 5, 2011. Plaintiff filed his reply in support of his Motion for Summary Judgment and his response to the Motion to Strike on October 26, 2011. Defendants filed their reply in support of their Motion to Strike on November 2, 2011.

Defendants filed their Motion for Summary Judgment on September 14, 2011. Plaintiff filed his response and a Motion to Strike on October 12, 2011. Defendants filed their reply in support of their Motion for Summary Judgment and their response to the Motion to Strike on October 26, 2011. Plaintiff filed his reply in support of his Motion to Strike on November 2, 2011.

Plaintiff filed a second Motion to Strike on October 26, 2011. No response was filed. Defendants filed a Motion to Amend their memorandum in support of their Motion for Summary Judgment on February 21, 2012, and Plaintiff filed his response on February 22, 2012.

The parties orally agreed on the record to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## MOTION TO STRIKE

Both parties have moved to strike portions of the others' statements of material facts on the grounds that they are not cited properly, in violation of the Local Rules, misconstrue the statements of witnesses or are otherwise without support in the record, or rely on inadequate evidence in

violation of the Federal Rules of Evidence. The requests are voluminous, with each party attacking a large number of the other party's statements of fact. Rather than lay out its reasoning on each of the disputes, the Court has considered the parties' arguments in the Motions to Strike, and the facts as laid out below are those that the Court deems material and are either undisputed by the parties or reflect the Court's determination that they are properly supported by the evidence in the record.

## MATERIAL FACTS

In May 2007, Plaintiff Roger L. Peele was an employee of Defendant City of Portage Police Department. He had been assigned to the Detective Bureau since 1992, with the exception of one year serving as Chief of Police for the City of Portage. Defendant Clifford Burch was the Chief of Police of Portage in May 2007, and Defendant Larry Jolley was the Assistant Chief of Police.

In the spring of 2007, Plaintiff supported Steve Charnetzky, the Street Superintendent for the City of Portage, in the democratic primary for the City of Portage mayoral election to replace outgoing mayor Doug Olson. Olga Velazquez was another democratic mayoral candidate who eventually won the nomination and the mayoral election.

On Friday, May 4, 2007, Defendant Burch met with Mayor Olson to inform the Mayor that it was Defendant Burch's intent to reassign Plaintiff within the police department. Also on May 4, 2007, Defendant Burch informed Defendant Jolley of his decision to reassign Plaintiff. Defendant Burch decided to reassign Plaintiff to the position of Station Duty Officer, a position created within the Portage Police Department in 2000 that had been held by several prior Portage Police Officers.

On Tuesday, May 8, 2007, the City of Portage mayoral primary election was held. Velazquez won the democratic primary, defeating Charnetzky. Plaintiff was at Charnetzky headquarters with other supporters that evening and spoke with *Northwest Indiana Times* newspaper reporter Joyce

Russell. On the following day, May 9, 2007, the *Northwest Indiana Times* published an article describing Plaintiff as indicating to the reporter that he believed the newspaper's coverage had been unfair and that he was unhappy with Porter County Sheriff David Lain's endorsement of Velazquez. Plaintiff was quoted as saying, "He won't get any support here."

On Thursday, May 10, 2007, Defendants Burch and Jolley, along with Terry Swickard, Detective Captain for the Portage Police Department, met with Plaintiff in Burch's office. Defendant Burch read from a prepared statement informing Plaintiff of the decision to reassign him to the position of Station Duty Officer, and gave Plaintiff a copy of the statement. It was dated May 10, 2007, although Defendant Burch testified that he prepared it on May 7, 2007, and left the date blank until the day he gave it to Plaintiff. Defendant Burch did not reference the newspaper article in the discussion or call the reassignment discipline. The reassignment was within Defendant Burch's power as Chief of Portage Police Department.

Plaintiff was not demoted by rank when he became a station duty officer. He performed a variety of police duties while in the position, and the administration of the Portage Police Department did not put any restriction on Plaintiff's duties. However, shortly after he began working in the position he took major medical leave, and after returning requested "light duty" for medical reasons. From the time his request for light duty was granted until his retirement on December 30, 2007, he was restricted from officer duties that would require him to deal with the public.

On May 11, 2007, *Northwest Indiana Times* editor Robert Blaskiewicz called the Portage Police Department and spoke with Keith Hughes, an information officer. On May 12, 2007, an article was published in the *Northwest Indiana Times* stating that Plaintiff "ha[d] been disciplined

for statements he made after the candidate's loss" to a reporter and that he had been reassigned to the position of station officer. Hughes had not discussed the reasons for Plaintiff's reassignment with anyone else before giving the statement to Blaskiewicz, but had assumed that the reassignment was due to Plaintiff's comments to the reporter.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving

party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## PARTIES' MOTIONS FOR SUMMARY JUDGMENT

Defendants move for summary judgment on all claims in Plaintiff's Complaint. In particular, Defendants argue that they are entitled to judgment as a matter of law on (1) Plaintiff's Due Process claims of deprivation of property interest and constructive discharge; (2) Plaintiff's claim for retaliation in violation of the First Amendment; and (3) Plaintiff's claim of defamation. Defendants also argue that (4) Defendants Burch and Jolley, officials sued in their personal capacity, are entitled to qualified immunity; (5) the City of Portage is not liable for any deprivation in this case; and (6) the Portage Police Department should be dismissed as a party because it lacks the legal capacity to be sued.

Plaintiff moves for summary judgment on his First Amendment claim and Defendants' counterclaims. He argues that he is entitled to summary judgment on (1) his First Amendment claims; (2) Defendants' counterclaim for malicious prosecution; and (3) Defendants' counterclaim alleging abuse of process; and argues that (4) Defendants Burch and Jolley are not entitled to qualified immunity; and (5) the City of Portage is subject to municipal liability.

The Court will address each argument in turn.

**A.      Due Process Claims**

Plaintiff contends that he was demoted and constructively discharged without due process. Defendants argue that they are entitled to summary judgment on Plaintiff's due process claims because Plaintiff's transfer was lateral and did not invoke due process rights, and his new working conditions do not meet the standard for constructive discharge.

"Procedural due process claims require a two-step analysis. The first step requires us to determine whether the plaintiff has been deprived of a protected interest; the second requires a determination of what process is due." *Luellen v. City of East Chicago*, 350 F.3d 604, 613 (7th Cir. 2003) (quoting *Strasburger v. Bd. of Educ.*, 143 F.3d 351, 358 (7th Cir. 1998)); *see also Barrows v. Wiley*, 478 F.3d 776, 780 (7th Cir. 2007).

1.      Deprivation of Protected Property Interest

Defendants argue that Plaintiff's transfer was lateral, not a demotion, and that such a lateral transfer does not invoke due process rights, provided the transfer involves no loss of pay or rank. Plaintiff argues that his reassignment did involve a loss of pay and other benefits, and that it either was not a lateral transfer or was the type of lateral transfer that can support a claim of deprivation under the 14th Amendment.

In order "to recover for a deprivation of a property interest, [a plaintiff] must show some economic loss from the [challenged] actions, or at least establish an identifiable impact on his future income or economic benefits." *Bordelon v. Chi. Sch. Reform Bd. of Tr.*, 233 F.3d 524, 530 (7th Cir. 2000) (citations omitted); *see also Barrows*, 478 F.3d at 780. Defendants argue that Defendant Burch reassigned Plaintiff to the position of Station Duty Officer and did not demote him. They argue that Plaintiff retained his rank of sergeant, sergeant's pay grade, police powers, uniform,

badge, and service weapon, that Plaintiff continued to perform police duties in the new position, and that he suffered no loss of character or reputation since his reassignment. The fact that Peele preferred his previous detective duties over the new duties, Defendants argue, does not mean that he had a protected property interest in his previous position. Defendants argue that in order to succeed on his due process claim, Plaintiff must show with specificity the loss he accrued through the alleged economic deprivation but that he has failed to demonstrate any loss of pay, character, or reputation protected under the Fourteenth Amendment.

Plaintiff characterizes the station duty officer as a meaningless position that most officers consider punishment and argues that it has been nicknamed "the time out room." Furthermore, he argues that his duties were more limited than those recorded in the written job description for the position and thereby indicate a demotion. Plaintiff disputes Defendants' argument that he continued to perform an array of police duties once transferred and argues that the transfer was materially adverse because his main functions had to do with delivery of papers, fingerprinting, and taking reports. However, "[p]urely dignitary and non-pecuniary interests, such as professional satisfaction, personal relationships, and reputation, do not constitute property. 'A job action that causes no pecuniary loss whatsoever does not implicate the Constitution.'" *Barrows*, 478 F.3d at 780 (quoting *Deen v. Darosa*, 414 F.3d 731, 734 (7th Cir. 2005)) (other citations omitted). Plaintiff admits that his salary and rank remained the same, but argues that his gross pay was reduced because he lost overtime and benefits that had been available to him when he held the job of detective but were not available in the station officer position. However, in support of this argument, Plaintiff cites only to his own response to Defendants' request for admission propounded during discovery.

As described above, in order to demonstrate a genuine issue of fact, the nonmoving party

must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). "[C]onclusory statements, unsupported by the evidence of record, are insufficient to avoid summary judgment." *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001). In this case, Plaintiff has provided no evidence of his pay and benefits before or after his reassignment. All he has set forth is unsupported argument that his gross pay was lowered and a citation to his own response to Defendants' request for admission. The Seventh Circuit "repeatedly ha[s] held that 'self-serving affidavits without factual support in the record will not defeat a motion for summary judgment.' . . . [T]he party opposing the motion [must] take reasonable steps to provide the district court sufficient evidence to create a genuine issue of material fact." *Albiero*, 246 F.3d at 933 (quoting *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993)) (citing *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998); *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 683 (7th Cir. 1999); *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). Furthermore, in other circumstances the Seventh Circuit has emphasized that "a party cannot use his own interrogatory answer, which is almost certainly hearsay when offered by that party himself to prove the truth of its contents, to support or oppose summary judgment." *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 n.2 (7th Cir. 2011) (citations omitted). Accordingly, Plaintiff has failed to demonstrate that there is a genuine issue of fact regarding whether he suffered any pecuniary loss upon reassignment, and therefore Defendants are entitled to summary judgment on Plaintiff's due process claim for demotion under the Fourteenth Amendment.

2.      Constructive Discharge

Defendants argue that Plaintiff cannot prevail on his constructive discharge claim because he cannot show that his working conditions had become unbearable from the vantage point of a reasonable employee. Mere transfer to a position that one does not want, Defendants argue, does not constitute constructive discharge. Plaintiff argues that the workplace conditions were objectively unbearable and forced him to resign. He argues that he was not intending to retire, but after the transfer felt that the unreasonable working conditions gave him no choice but to retire.

There are two forms of constructive discharge. *Fischer v. Avanade, Inc.*, 519 F.3d 393, 409 (7th Cir. 2008). To succeed under "the first form, where an employee resigns due to alleged discriminatory harassment, . . . 'we require the plaintiff to demonstrate a discriminatory work environment even more egregious than the high standard for hostile work environment.'" *Id*. (quoting *EEOC v. Univ. of Chi. Hosps.*, 276 F.3d 326, 331-32 (7th Cir. 2002)) (other quotations and marks omitted). The second form occurs "[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns." *Univ. of Chi. Hosps.*, 276 F.3d at 33. Plaintiff does not argue that he resigned to avoid termination under the second form of constructive discharge or that his employment would not have continued had he not retired. Instead, Plaintiff's claim is that his work conditions were so unreasonable that he had no choice but to retire.

To determine whether Plaintiff was constructively discharged, "'[t]he inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?'" *Levenstein v. Salafsky*, 414 F.3d 767, 774 (7th Cir. Ill. 2005) 124 S. Ct. at 2351 (citation omitted) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004)

and applying the Supreme Court's constructive discharge analysis under Title VII to claims brought under the due process clause). Defendants argue that Plaintiff was merely transferred to a job he disliked, and that this transfer did not constitute unbearable working conditions. Plaintiff argues that he wasn't planning on retiring, but chose to retire after being reassigned because of the unbearable working conditions. Constructive discharge requires severe harassment, frequently to the level of threats to an employee's physical safety. *See, e.g., Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 640 (7th Cir. Ill. 2009); *see also Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. Ind. 2010); *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000) (listing example cases). Plaintiff has made no claim that he was physically threatened or experienced a similar level of severe harassment that would be objectively unbearable to any reasonable employee, but merely argues that *he*, as "a policeman who was good at his job and enjoyed the duties of a policeman," found the job unbearable. However, other members of the Portage Police Department had worked in the role of Station Duty Officer without quitting or retiring, indicating that the position itself was not objectively unreasonable, even to other police officers. Even if his duties were not exactly the same as those performed by other officers in the role of station duty officer, particularly while he was on light duty for medical reasons, Plaintiff has failed to identify any facts that suggest that the position was objectively unbearable or in any way rose to the level even of a hostile work environment, let alone something even more egregious. Accordingly, Defendants are entitled to summary judgment on Plaintiff's constructive discharge claim.

## B.     First Amendment Retaliation Claim

Both parties move for summary judgment on Plaintiff's First Amendment retaliation claim. Defendants argue that Plaintiff cannot make out a retaliation claim because he cannot show that the

Defendants would not have taken the challenged action were it not for his protected conduct. Plaintiff argues that he engaged in protected speech and that he has demonstrated evidence that the retaliation he suffered would not have happened if it were not for his protected speech.

"[H]iring, firing, or transferring government employees based on political motivation violates the First Amendment, with certain exceptions for policy-making positions and for employees having a confidential relationship with a superior." *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004). "To make out a prima facie case of first amendment retaliation, a public employee must present evidence that: (1) his speech was constitutionally protected, (2) he has suffered a deprivation likely to deter free speech, and (3) his speech was at least a motivating factor in the employer's action." *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1123 (7th Cir. 2009) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)) (quotation marks omitted). The Court will examine each element in turn.

1.    Constitutionally Protected Speech

A public employee's "speech is constitutionally protected" for the purposes of the first element of a retaliation claim "if '(1) the employee spoke as a citizen on matters of public concern, and (2) the interest of the employee as a citizen in commenting upon matters of public concern outweighs the interest of the State as an employer in promoting the efficiency of the public services it performs through its employees.'" *Nagle*, 554 F.3d at 1123 (quoting *Sigsworth v. City of Aurora*, 487 F.3d 506, 509 (7th Cir. 2007)).

The Complaint alleges "[t]hat on May 9, 2007, Plaintiff, [sic] Roger L. Peele voiced his First Amendment Right to publicly support his candidate for Democratic Mayor of Portage, Steve Charnetzky," and "[t]hat immediately following his public show of support for candidate, [sic] Steve Charnetzky, he was disciplined and moved from the detective bureau to a station officer." Compl.

¶¶ 7, 8. There is no other speech mentioned in the Complaint. Accordingly, in their brief, Defendants address only Plaintiff's speech on May 9, 2007, as the relevant constitutionally protected speech. Defendants admit that in the conversation with the reporter on May 9, 2007, Plaintiff was exercising his rights as a private citizen and speaking on an issue of public concern and therefore protected by the First Amendment, but deny that the speech was linked to deprivation or motivated the decision to reassign Plaintiff.[1]

Plaintiff's Motion for Summary Judgment mentions his activity in the primary campaign, but his arguments regarding retaliation refer only to the statements he made on the night of the primary election, on May 8, 2007. Pl. Br. at 21 [DE 50]. In an accounting of facts he disputes in his response to Defendants' Motion for Summary Judgment, Plaintiff notes that he "details a number of facts and examples to support his 1st Amendment Speech retaliation claim, which included not just the comment about Dave Lain which was reported in the *Times* newspaper article, but included his overall support of Steve Charnetzky and political involvement." Pl. Resp. Br. at 5 [DE 61]. However, his argument still focuses on the timing of the reassignment relative to the primary election night conversation. Pl. Resp. Br. at 7-8 [DE 61]. It is not until Plaintiff's reply brief that he clearly states that he "contends that it was not only his political speech on May 8, 2007 but also the totality of his political speech, involvement and support of Steve Charnetzky during the democratic mayoral primary in 2007 that served as the basis for the retaliatory conduct." Pl. Rep. Br. at 1 [DE 69].

_____

[1] Defendants filed Defendants [sic] Motion to Amend/Supplement their Memorandum in Support of Summary Judgment [DE 83] on February 21, 2012. In the Motion, they represent that they would like to change their argument and contend that Plaintiff's speech on primary election night was not protected by the First Amendment. However, not only is this Motion untimely, but it is also moot. As described below, Defendants' Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied on his First Amendment claims because Plaintiff cannot demonstrate that the adverse employment action was a motivating factor in his reassignment.

Plaintiff nowhere argues that the Complaint has been amended to include additional instances of protected speech, nor does he argue in any of his briefs relating to his or Defendants' Motions for Summary Judgment that Defendants had or should have had notice that Plaintiff intended to claim protection for additional instances of speech. Plaintiff's only argument that Defendants received any notice that Plaintiff intended to claim multiple instances of protected speech occurs in Plaintiff's Motions to Strike portions of Defendants' statement of material facts and related reply brief. However, the documents are only captioned as Motions to Strike, *see* N.D. Ind. L.R. 7-1(a), and the only relief requested is that the Court strike portions of Defendants' statement of material facts. The motions do not request that the Court add, or construe as added, any claims to the Complaint. Nowhere does Plaintiff argue that the Complaint has been amended to expand the claimed relevant speech nor that Defendants have explicitly or impliedly consented to litigating additional claims of protected speech.

Generally, "[a] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) (citations omitted). However, "a pleading can be constructively amended when both parties expressly or impliedly consent to the constructive amendment." *Hutchins v. Clarke*, 661 F.3d 947, 957 (7th Cir. 2011) (citing Fed. R. Civ. P. 15(b); *In re Prescott*, 805 F.2d 719, 725 (7th Cir. 1986). Federal Rule of Civil Procedure 15(b) provides for amendment of pleadings during and after trial, and provides, in relevant part: "The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits," and that "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects

as if raised in the pleadings." Fed. R. Civ. P. 15(b)(1), (2). "The test for such consent is whether the opposing party had a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment." *In re Prescott*, 805 F.2d at 725 (quotation omitted).

Defendants were not fairly informed of Plaintiff's expanded claims of protected speech until Plaintiff's reply brief in support of his Motion for Summary Judgment, providing no opportunity to present any defense to the new claims. Defendants appropriately replied to Plaintiff's Motion to Strike as a motion to strike, rather than as a motion to amend, and deny that they had any notice that the alleged retaliation was for any other political activity or statements beyond the single incident included in the Complaint. In a footnote in their reply brief in support of their Motion for Summary Judgment, filed after Plaintiff's Motion to Strike, Defendants note that Plaintiff's Complaint clearly identifies Plaintiff's statement on May 9, 2007, as the single instance of protected speech that forms the basis of Plaintiff's retaliation claim, further clarifying that they have not consented to trying additional issues.

"One sign of implied consent is that issues not raised by the pleadings are presented and argued without proper objection by opposing counsel," *In re Prescott*, 805 F.2d at 725 (citations omitted), but as soon as Plaintiff's argument was made known to Defendants, they properly objected. *Cf. Smith v. Safety-Kleen Sys., Inc.*, No. 10C6574, 2012 WL 162206, at *7, 2012 U.S. Dist. LEXIS 5908, at *22-23 (N.D. Ill. Jan. 18, 2012) (finding no amendment when the new theory of liability was "mentioned . . . in previous filings with the court. And defendants responded to the argument, albeit in a footnote. But . . . [the defendants] objected to the argument in its summary judgment reply as an improper amendment to the complaint, and plaintiffs have not moved to amend their complaint

or otherwise respond."). Plaintiff has not articulated any explicit argument that the Complaint has been amended or that Defendants have consented to litigate retaliation claims based on multiple instances of speech. Furthermore, Defendants would be prejudiced by their inability to put forth arguments if additional claims of protected speech are allowed at this stage in the proceedings. Accordingly, the Court will proceed on the sole claim set forth in the Complaint.

Both parties agree that Plaintiff's speech to the newspaper reporter on May 7, 2007, is protected by the First Amendment. Therefore, the Court moves on to the other elements of a prima facie case of discrimination.

### 2. Speech as a Motivating Factor

To satisfy his initial burden of demonstrating retaliation, the "plaintiff need only show that a violation of his First Amendment rights was a 'motivating factor' of the harm he's complaining of. . . . A 'motivating factor,' as the term is used in the cases, is a sufficient condition, but never a necessary one." *Greene v. Doruff*, 660 F.3d 975, 977-78 (7th Cir. 2011). If Plaintiff is able to show that his protected speech was a sufficient condition for the Defendants' decisions, then the "defendant[s are] entitled to rebut with evidence that the plaintiff's exercise of his constitutional rights though a sufficient condition was not a necessary condition of his . . . harm." *Id*. at 979.

Defendants apply a slightly higher standard, and argue that Plaintiff cannot establish that Defendants would not have reassigned him to the station officer position but for his speech. Plaintiff argues that he has demonstrated but-for causation through both direct and circumstantial evidence.

Defendants argue that the decision was made to reassign Plaintiff before he made the protected speech, so the decision could not be related to the comments. Defendants argue that Defendant Burch met with Mayor Olson on May 4, 2007, four days before Plaintiff's protected

speech of May 8, 2007, to discuss Burch's decision to reassign Plaintiff. Plaintiff argues that the decision to reassign him was made after and because of Plaintiff's speech on primary election night and that the testimony about the date the decision was made should be disregarded by the Court.

In the statement of facts in his Motion for Summary Judgment, Plaintiff includes the fact that the conversation between Burch and Olson about Plaintiff's reassignment occurred before the transfer. He does not include the date of the conversation in his statement of facts, but in support of the contention cites to Burch's deposition testimony, which does include the date. Despite moving to strike a large number of Defendants' other statements of fact as unsupported by the record or mischaracterizations of evidence, he does not include a request that the Court strike Defendants' statement that "[o]n Friday, May 4, 2007, Burch informed Mayor Douglas Olson . . . that it was Burch's intent to reassign Peele."[2] It is not until his response to Defendants' Motion for Summary Judgment that Plaintiff argues about the veracity of Burch and Olson, expressing his disbelief at their ability to remember a date several years after its occurrence without any citation to contrary evidence.

In support of his argument that the decision to reassign Plaintiff was made after his protected speech, Plaintiff argues that the date on the letter Defendant Burch read to Plaintiff describing the reassignment, May 10, 2007, reflects the date that the decision to reassign him was made. However, Burch testified in his deposition that he prepared the document on "Monday morning, May the 7th of 2007," but that "[b]ecause I didn't know when I would have the opportunity to see Sergeant Peele[,] . . . I left the date opened until the time I actually . . . read it to him [] and reassigned him."

---

[2] The Court notes that in his response to Defendants' Motion to Strike, Plaintiff appears to be arguing that his own recitation of the fact that the conversation occurred be stricken from his Motion for Summary Judgment, but Plaintiff has not moved for that relief. Pl. Resp. to Defts. Mtn. to Strike at 12-14 [DE 70].

Ex. 4 to Def. Br., Burch Dep. p. 56 l. 9-17 [DE 53-3]. Beyond unsupported and inconsistent arguments reflecting his own distrust of Burch and Olson's memories and the veracity of their testimony, Plaintiff does not cite to any evidence that would contradict the testimony of Burch and Olson that their conversation about Plaintiff's reassignment occurred on May 4, 2007, or that the date on the letter describing the reassignment reflects the date the reassignment decision was made rather than the date it was communicated to Plaintiff.

The facts of the date Burch and Olson discussed Plaintiff's reassignment and the date that the letter describing it was drafted are to be viewed in the light most favorable to Plaintiff. In order to demonstrate a genuine issue of fact about the dates, Plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). Despite Plaintiff's numerous character attacks on Burch and Olson and accusations of conspiracy and cover-up, Plaintiff has failed to set forth any facts that show a genuine dispute about the occurrence of the May 4, 2007, conversation between Burch and Olson regarding Plaintiff's reassignment, nor the date that Burch prepared the letter describing Plaintiff's reassignment.

Although the parties do not dispute that Plaintiff's political speech on the night of May 8, 2007, was protected by the First Amendment, the decision to reassign him was made before his protected speech occurred. Accordingly, he cannot demonstrate that the protected speech was a motivating factor in his reassignment. The Court need not turn to the remaining element of Plaintiff's retaliation claim – whether Plaintiff has suffered a deprivation likely to deter another from making similar speech – and grants summary judgment to Defendants on Plaintiff's First

Amendment retaliation claim.

## C. Defamation Claim

Defendants move for summary judgment on Plaintiff's claim for defamation, arguing that he cannot succeed on his claim. Plaintiff makes no argument regarding his defamation claim.

"To maintain an action for defamation, a plaintiff must show a communication with four elements: 1) defamatory imputation; 2) malice; 3) publication; and 4) damages." *Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 261 (Ind. 1994) (citation omitted); *see also Baker v. Tremco Inc.*, 917 N.E.2d 650, 657 (Ind. 2009). Plaintiff must demonstrate that any allegedly defamatory statements were false, as "[t]rue statements never give rise to liability for defamation." *N. Ind. Pub. Serv. Co. v. Dabagia*, 721 N.E.2d 294, 301 (Ind. Ct. App. 1999) (citing *Conwell v. Beatty*, 667 N.E.2d 768, 774 (Ind. Ct. App. 1996); Ind. Const. Art. 1, § 10).

Defendants presume that the statements by which Plaintiff alleges he was defamed are those found in the *Northwest Indiana Times* newspaper article indicating that Plaintiff's reassignment to station officer was disciplinary action. Defendants argue that Plaintiff admits that the argument is true, as he is basing his case on the idea that Plaintiff's reassignment was taken as a disciplinary action. Defendants concede that they do not believe that the communication was entirely truthful, but argue that they were not responsible for the publication of any false statement about Plaintiff and that Plaintiff cannot show any negative repercussions that resulted because of the article. Plaintiff has failed to make any argument about the defamation claim. Accordingly, the Court concludes that there is no genuine issue for trial, and grants summary judgment to Defendants on Plaintiff's claim of defamation.

### D.    Other Constitutional Claims

As described above, Plaintiff cannot succeed on his constitutional deprivation claims. Therefore, Defendants Burch and Jolley are entitled to summary judgment on the claims brought against them in their individual capacity. *See Woodruff v. Mason*, 542 F.3d 545, 559 n. 17 (7th Cir. 2008) (citing *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1036 (7th Cir. 2003)).   The Court likewise need not address the parties' argument about Defendant City of Portage's liability under 42 U.S.§ 1983.  In order to establish liability under § 1983, "a plaintiff . . . must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (it is only "when execution of a government's policy or custom . . . inflicts the injury that the government is responsible under § 1983").  Since there is no underlying deprivation, the Court need not reach the *Monell* issues related to the liability of Defendant City of Portage nor any claim of a conspiracy to deprive Plaintiff of any constitutional rights.

### E.    Counterclaim for Malicious Prosecution

Plaintiff argues that he is entitled to summary judgment on Defendants' counterclaim for malicious prosecution.  Defendants argue that summary judgment on this claim is premature.

To succeed on their counterclaim for malicious prosecution, Defendants must prove that: "(1) [Plaintiff] instituted or caused to be instituted an original action against [Defendants]; (2) [Plaintiff] acted maliciously in so doing; (3) [Plaintiff] had no probable cause to institute the original action; and (4) the original action was terminated in [Defendants'] favor." *Gov't Payment Serv. v. Ace Bail Bonds*, 854 N.E.2d 1205, 1210-1211 (Ind. Ct. App. 2006) (citations omitted).  As described above, Plaintiff's action has now been terminated in Defendants' favor.  Accordingly, summary judgment

cannot be granted for Plaintiff on Defendants' counterclaim for malicious prosecution.

## F.     Counterclaim for Abuse of Process

"An action for abuse of process requires a finding of misuse or misapplication of process for an end other than that which it was designed to accomplish" and "has two elements: (1) 'ulterior purpose or motives;' and (2) 'a willful act in the use of process not proper in the regular conduct of the proceeding.'"  *Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1029 (Ind. Ct. App. 2005) (quoting *Town of Orland v. Nat. Fire & Cas. Co.*, 726 N.E.2d 364, 371 (Ind. Ct. App. 2000)) (other citations omitted).  "In contrast to malicious prosecution, an action for abuse of process does not require proof that the action was brought without probable cause or that the action would have terminated in favor of the party asserting abuse of process." *Lindsay v. Jenkins*, 574 N.E.2d 324, 326 (Ind. Ct. App. 1991) (quotation and citations omitted).

Defendants only argue that Plaintiff's Motion for Summary Judgment on this claim is premature and that Plaintiff both knew his reassignment was appropriate and intended to retire at the end of 2007 even before being reassigned.  Defendants do not identify with specificity the ulterior purpose they ascribe to Plaintiff nor do they identify the willful act in the use of process they are alleging occurred outside of the regular conduct of the current judicial proceeding.  Defendants argue that Plaintiff was seeking remuneration from the city because he was unhappy with his reassignment and because he needed money, implying that Plaintiff does not believe the claims he has made about the reasons for his reassignment and retirement, but do not allege, for example, that Plaintiff has filed any motions in this case with the intent to accomplish anything other than what was stated in the request for relief. *See, e.g., Crenshaw v. Antokol*, No. 3:04-CV-182, 2005 WL 6088857, at *8, 2005 U.S. Dist. LEXIS 5504, at *22-23 (N.D. Ind. Mar. 29, 2005) ("[T]here is no allegation . . . that the

Lawyer Defendants filed their summary judgment motion for anything other than the end that such motions were designed to accomplish -- obtaining summary judgment. . . [The Plaintiff] has not alleged that the Defendants used legal process in a way that was not proper in the normal prosecution of the case."); *Wells v. Bernitt*, 936 N.E.2d 1242, 1254 (Ind. Ct. App. 2010) ("[T]here is no liability [for abuse of process] where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.") (quotation omitted).  Defendants have failed to create a genuine issue of material fact regarding either element of their abuse of process counterclaim.  Accordingly, Plaintiff's Motion for Summary Judgment is granted as to Defendants' counterclaim for abuse of process.

## G.    Dismissal of Portage Police Department

Defendants argue that Portage Police Department is not a proper party because it lacks the legal capacity to be sued and therefore request that the claim against Defendant Portage Police Department be dismissed.  Plaintiff agrees.  Accordingly, Defendants' Motion is granted as to that request, and Portage Police Department is dismissed as a party defendant.

## CONCLUSION

For the foregoing reasons, the Court hereby:

(1)    **GRANTS in part and DENIES in part** Plaintiff's Motion for Summary Judgment [DE 49];

(2)    **GRANTS** Defendants' Motion for Summary Judgment [DE 52];

(3)    **GRANTS in part and DENIES in part** the  Motion to Strike Portions of Plaintiff's Statement of Material Facts [DE 55];

(4)    **GRANTS in part and DENIES in part** the Plaintiff's Motion to Strike [DE 63];

(5)     **GRANTS in part and DENIES in part** the Plaintiff's Motion to Strike Portion of Defendants' Material Facts Designated in Support of their Response to Plaintiff's Motion for Summary Judgment [DE 72];

(6)     **DENIES** the Defendants [sic] Motion to Amend/Supplement their Memorandum in Support of Summary Judgment [DE 83]; and

(7)     **ORDERS** that Defendant Portage Police Department is dismissed as a party defendant.

The Court grants summary judgment in favor of Defendants on all of Plaintiff's claims and grants summary judgment to Plaintiff on Defendants' counterclaim for abuse of process. Accordingly, the only claim remaining is Defendants' counterclaim for malicious prosecution.

The Court hereby **REAFFIRMS** the final pretrial conference set for **June 15, 2012, at 10:00 a.m.**, and the trial set for **July 23, 2012**.

SO ORDERED this 28th day of February, 2012.

 s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record